# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **CURRY LAW FIRM,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 3:21-cv-00357 |
| | ) |
| **HEALTH CARE INDEMNITY, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

In this dispute over unpaid invoices for legal services rendered, Health Care Indemnity, Inc. ("HCI") has filed a Motion to Dismiss and Compel Arbitration (Doc. No. 13), to which the Curry Law Firm ("Curry") has responded in opposition (Doc. No. 16), and HCI has replied (Doc. No. 17). For the reasons that follow, HCI's motion will be granted.

## I.

The Complaint alleges the following: Beginning in 1996, and for the next 22 years, HCI, a medical liability insurance company, retained Curry as local counsel in connection with the defense of multiple medical malpractice complaints and other lawsuits filed against its insured providers and facilities. (Doc. No. 1, Complaint ¶¶ 3, 6). In both 2007 and 2017, HCI issued "Litigation Guidelines" to its legal services providers that included billing guidelines and general guidelines for handling cases. HCI and Curry also entered into an engagement agreement in August 2017, whereby Curry and its attorneys were to be paid $150.00 per hour for attorney services, $100.00 per hour for nurse consultant services, and $75.00 per hour for paralegal services. (Id. ¶ 9).

Over the years, Curry prepared detailed and itemized invoices covering months of its work and submitted them to HCI for payment. After processing and review, HCI paid those invoices.

However, HCI rejected roughly 6 months of invoices for services rendered between June and November 2015. (Id. ¶ 13). Then, in February 2018, HCI rejected invoices submitted by Curry for work conducted during the months of April through August 2017. (Id. ¶ 15).

HCI terminated Curry's services on March 16, 2018. (Id. ¶ 16). In April 2019, and again in September 2019, Curry submitted additional invoices to HCI, but many remain unpaid to date. (Id. ¶¶ 17-19). At the time HCI made its final payment on January 23, 2020, there remained 93 outstanding, or partially outstanding invoices in the amount of $366,777.18. (Id. at ¶ 20).

As a result of the foregoing, Curry sues HCI for breach of contract, unjust enrichment, and under a theory of quantum meruit. It seeks compensatory damages, pre-judgment interest, attorney fees, and expenses.

In lieu of filing an Answer, HCI filed the present motion to compel arbitration. This is based upon the 2017 Litigation Guidelines, which contains the following arbitration clause:

> **XIII. ARBITRATION OF DISPUTES**
>
> Any and all disputes, claims or controversies (whether in tort, contract or otherwise) arising out of or relating to this agreement, the relationship between HCI and Firm, the services provided hereunder or any other matter that the parties are unable to resolve between themselves, shall be determined by confidential, final and binding arbitration. The matters submitted to arbitration shall be heard and determined in Nashville, Tennessee in accordance with the then existing state or county comprehensive arbitration rules. To the extent state law is applicable, the arbitrators shall apply the substantive law of Tennessee. By agreeing to arbitrate, HCI and Firm expressly waive their rights to a jury trial.

(Doc. No. 14-1 at 49).

## II.

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising

out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a court determines that the cause of action is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete. 9 U.S.C. § 3.

There is strong federal policy in favor of arbitration of disputes. See O.J. Distrib., Inc. v. Hornell Brewing Co., 340 F.3d 345, 356 (6th Cir. 2003); Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 205 F.3d 906, 911 (6th Cir. 2000). Indeed, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

Despite the strong preference favoring arbitration, "a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" Hurley v. Deutsche Bank Tr. Co. Americas, 610 F.3d 334, 338 (6th Cir. 2010) (quoting O.J. Distrib., 340 F.3d at 355. Both inconsistency and actual prejudice are required, Shy v. Navistar Int'l Corp, 781 F.3d 820, 828 (6th Cir. 2015), neither of which has been established here.

### III.

Without question, the "any and all dispute, claims or controversies (whether in tort, contract, or otherwise" language relating to the "agreement," "relationship," and "services provided" covers the claims contained in the Complaint. Curry does not argue otherwise. Instead, it contends that HCI has waived its right to arbitrate:

Curry tried multiple times to work with Defendant to come to an agreement about

3

> how the parties should proceed to arbitration. This was necessary because Defendant's arbitration agreement was vague and did not specify an administrative body for the arbitration. Defendant repeatedly ignored Curry's requests to engage in private arbitration and refused to discuss the topic. If Defendant had wanted to arbitrate before it filed its Complaint, Curry was ready and willing. Instead, it appears Defendant wanted to stall and avoid Curry's claims. This left Curry no option, given that statutes of limitations were running on its claims, but to file its lawsuit here.

(Doc. No. 16 at 3). Curry argues that "HCI's refusal to discuss arbitration with Curry is inconsistent with the right to arbitrate," and relies exclusively on Southern Systems, Inc. v. Torrid Oven Ltd., 105 F. Supp.2d 848, 852 (W.D. Tenn. 2000). Curry also claims that it has suffered prejudice because it "incurred filing fees of $402 in this Court." (Id. at 4).[1]

"Prejudice does not refer to enforcing a bargained-for agreement, even where such enforcement will obligate a party to litigate in more than one forum," Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 229–30 (2d Cir. 2001), and hence Curry's waiver argument fails for this reason alone. This is particularly so when, as here, the claims were clearly subject to arbitration, yet suit was filed instead. See Hodgson v. NCL (Bahamas), Ltd., 151 F. Supp. 3d 1315, 1317 (S.D. Fla. 2015) (rejecting argument that case should be stayed because plaintiff would be required to pay another $400 filing fee to confirm or vacate an arbitration award when "counsel knew or should have been aware that th[e] case would be subject to arbitration"). Indeed, that suit was filed before the right to arbitration was invoked does not itself establish prejudice. See, e.g., Borror Prop. Mgmt., LLC v. Oro Karric N., LLC, 979 F.3d 491, 496 (6th Cir. 2020) ("In the arbitration setting, prejudice tends to arise only after the wheels of justice have begun to turn. For example, prejudice can result from a party spending substantial time or money litigating a case

---

[1] To the extent that Curry believes the arbitration agreement is ambiguous or vague and for that reason somehow unenforceable, that argument has neither been made nor briefed by the parties.

4

before an arbitration right is invoked."); Johnson Assocs. Corp. v. HL Operating Corp., 680 F.3d 713, 719 (6th Cir. 2012) ("Prejudice can [occur] when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense.")

Curry's waiver argument also fails because it has not established that HCI's actions "were completely inconsistent with any reliance on an arbitration agreement." Hurley, 610 F.3d at 338. Its singular reliance on Southern Systems in this regard is also misplaced.

In Southern States, a contractor was found to have waived the right to arbitration when it "(1) fil[ed] an answer and counterclaim without invoking the arbitration clause; (2) engag[ed] in extensive pretrial discovery by taking ten depositions (the maximum allowed under the Rules) and propounding interrogatories and document requests; (3) delay[ed] its invocation of the arbitration clause for eighteen months from the time the complaint was filed and seeking a stay one month before the discovery deadline and two months before trial; and (4) fil[ed] and actively pursu[ed] a motion to dismiss and/or change of venue." 105 F. Supp. 2d at 854. HCI's actions hardly exhibit the same type of contumacious and delaying conduct.

True, as early as March 9, 2021, Curry inquired about HCI's position regarding arbitration and this correspondence continued until April 22, 2021. It is also true that suit was filed on May 3, 2021, after counsel for HCI on April 25, 2021 indicated that he intended to respond to Curry's inquiries about the unpaid invoices by the close business on April 30, 2021. (See Doc. No. 16-2, Alexander Declaration and attachments). Nevertheless, this delay between inquiry and filing is extremely short, even in the abstract. It is even less egregious when one consider the entirety of the

communications between the parties about the unpaid invoices as evidenced by the following timeline submitted by HCI and supported by the record:

> • **March 25, 2021**: Stan Cobb, Vice President of HCI, meets via telephone conference with counsel for Curry, Beth Alexander.
>
> • **March 26, 2021**: Ms. Alexander, Mr. Cobb, and Guy Curry meet via telephone conference to discuss the details of the allegedly outstanding invoices and the parties' various positions regarding the same.
>
> • **April 2-14, 2021**: HCI receives additional information from Curry regarding the relevant invoices and continues its review of the same.
>
> • **April 19, 2021**: Stan Cobb, Beth Alexander, and Guy Curry meet via telephone conference to discuss their respective positions on the outstanding invoices.
>
> • **April 22-26, 2021:** Beth Alexander renews Curry's request for information regarding arbitration. Stan Cobb notifies Beth Alexander that he is still reviewing the issue and offers a response by close of business on April 30, 2021.
>
> • **May 3, 2021**: Curry files its Complaint.

(Doc. No. 17 at 2-3) (internal citation to record omitted).

"Because of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred." Glazer v. Lehman Bros., 394 F.3d 444, 450 (6th Cir. 2005) ; accord Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc., 350 F.3d 568, 573 (6th Cir. 2003). Nothing before the Court indicates that HCI was acting inconsistently with its right to arbitrate this dispute. To the contrary, it suggests that HCI was communicating with Curry in an attempt to resolve the issue prior to the need for arbitration. Perhaps HCI could have been a bit more diligent, but it did not act in a manner completely inconsistent with its right to demand arbitration.

## IV.

Based upon the foregoing, HCI's Motion to Dismiss and Compel Arbitration (Doc. No. 13) is hereby **GRANTED** and the parties are **ORDERED** to arbitrate their dispute in accordance with

their agreement. This case is hereby **STAYED**, and the Clerk shall administratively close this case subject to a motion to reopen by either of the parties after arbitration has been completed.

    IT IS SO ORDERED.

_____<br>
WAVERLY D. CRENSHAW, JR.<br>
CHIEF UNITED STATES DISTRICT JUDGE